ENGLISH VS. OLIVER, Collector.

LEGISLATIVE ENACTMENTS: *When presumed constitutional, etc.*

Where an act of the legislature is regular upon its face, duly approved by the speaker of the house, the president of the senate and the governor of the state, this, if not conclusive, raises a strong presumption in favor of the validity of the act, and where the proof fails to show that the legislature failed to conform their proceedings to the constitution, the act will be held as a valid law in full force.

LEGISLATURE: *Power of, over the subject of taxation.*

The power of the legislature over the subject of taxation is supreme, except only wherein limited by the constitution, and they may make and enforce such laws respecting the amount and kind of funds in which taxes shall be paid in the political subdivisions — the counties and towns — as may be deemed proper, and such counties and towns cannot resist, nor can their local officials in any way modify such regulations.

STATUTES CONSTRUED: *Acts of July* 23, 1868, *March* 24, 1869, *March* 16, 1871, *and April* 29, 1873, *construed; in what funds taxes payable.*

All state, poll, county, municipal, district school, and license taxes may be paid in five per cent. treasurer's certificates, commonly known as state scrip, except tax to pay interest on the public debt. State scrip issued since the passage of any act by the legislature levying a tax, or authorizing a county or city to levy a tax, to be paid in United States currency, cannot be taken in payment of that tax; *bona fide* holders of county bonds issued in pursuance of the act of March 28, 1871, cannot be compelled to accept treasurer's certificates issued after the passage of that act, nor could the counties be compelled to accept such scrip for the taxes levied for such purposes; state scrip issued *since* the 29th of April, 1873, cannot be received in payment of the tax levied to pay interest on county bonds issued under the provisions of the act approved April 29, 1873; neither can the state liquor tax, levied for the benefit of the sinking fund, be paid in scrip issued since April 28, 1873.

PETITION for *Mandamus.*

*E. H. English* and *T. D. W. Yonley,* for plaintiff.

*W. G. Whipple,* for defendant.

GREGG, J.   On the 29th of December, 1873, the plaintiff filed his petition in this court, against the defendant as collector of taxes for Pulaski county, alleging that he was a taxpayer in said county and the owner of lots 1, 2, 3, 8 and 9 in block 220, west of the Quapaw line, in the city of Little Rock; that said lots were valued and assessed upon the tax books of said county for the year 1873, at $1,450; that the tax books are in the hands of said Oliver as collector, and that he is proceeding to collect the state, county and city taxes thereon; that taxes are assessed as follows upon said lots and against the petitioner, to wit:

| | |
|---|---:|
| State general purposes tax, | $14 50 |
| Interest on the public debt tax, | 3 63 |
| One poll school tax, | 1 00 |

County taxes are as follows:

| | |
|---|---:|
| County general purposes tax, | 15 95 |
| County interest tax, | 6 52 |
| County road tax, | 1 45 |
| County building tax, | 5 07 |

City taxes are as follows:

| | |
|---|---:|
| City general purposes tax, | 24 64 |
| City sinking fund tax, | 1 45 |
| District school tax, | 10 89 |
| City railroad tax, | 4 35 |
| Total, | $89 46 |

That these several items of taxes were assessed and entered upon the tax books under the provisions of the act of the general assembly of April 28, 1873; that for want of money to pay her liabilities the state has from time to time issued auditor's or treasurer's certificates or warrants, and made them receivable for state, county and municipal taxes, and he insists that he has a right to pay all such taxes in such treasurer's certificates; that on the 24th day of December, 1873, he tendered to said Oliver as such collector $89.46 in such treas-

urers's certificates, issued in September, 1871, in payment of the taxes so assessed against him upon the lots aforesaid; and at the same time he tendered him in such scrip the full amount of each separate item of taxes as above stated in payment thereof, but that he refused to accept such scrip in payment of said taxes and every item thereof, except the item of state tax for general purposes of $14.50.

That he also tendered said collector a like amount of like treasurer's certificates issued in June, 1875, in payment of said sum of taxes, and also for the several items thereof, all of which he refused to accept only for the said item of $14.50.

And he prayed the court to issue a *mandamus* against the said Oliver, as such collector, compelling him to accept said certificates in payment of said several items of taxes.

Oliver appeared by his attorney, W. G. Whipple, and responded that the act of the legislature of the 28th of April, 1873, under which the said taxes were assessed, is unconstitutional and void, not having been read three times on different days in the house of representatives, nor the rules suspended, which required such readings, etc.

And he also interposed a general demurrer to the plaintiff's complaint, and upon this response and demurrer the cause was submitted.

The first question raised in the response goes to the constitutionality of the act of the legislature, under which this assessment was made, alleging that in the house of representatives the bill was not read three times on different days, nor were the rules suspended, etc., and that the act is void.

The act is regular upon its face, duly approved by the speaker of the house, the president of the senate and the governor of the state, and published as a law.

If not conclusive, this raises a strong presumption in favor of the validity of the act.

The exhibit made of record in the case, and, which counsel have agreed is a correct copy of the house journal, shows that different bills were introduced and read a first and second time and referred to committees; and that on the 22d of April, 1873, the house proceeded to consider the substitute, for house bills 31, 41, 48 and other bills of the house, entitled "An act regulating the assessment and collection of revenue." After certain amendments were offered and voted upon, Mr. Johnson moved that the bill be read a third time, and under the operation of the previous question, it was so ordered and the bill accordingly read a third time by title.

Mr. Erwin called for the reading of the bill.

Pending the reading, Mr. Copeland moved the further reading of the bill be dispensed with. That motion was by the chair ruled out of order. An appeal was taken, and the chair was not sustained.

The question then being upon the passage of the bill, it was put and decided in the affirmative, forty voting for, and thirty voting against the bill — twelve not voting.

The proceedings appear to have been irregular, or that a complete journal was not made of all that was done. It is not affirmatively shown how this substitute bill came before the house, nor is it affirmatively shown that it was read a first and second time, but the journal shows it was read a third time. To have a third reading would imply a first and second, and there is nothing before us to show that such readings were not had.

In the case of *Miller and Gibson v. The State*, 3 Ohio St., 484, the supreme court, in discussing a like question, said: "But whether the constitution, in the particular under consideration, is merely directory or not, * * where the journals show a bill was passed, and there is nothing in them to show that it was not so read, this presumption is not liable to be rebutted by proof," etc.

Legislators, as well as judges, take an oath to support the constitution, and the law requires us to presume in favor of their action, and the agreed statement of facts does not show that the legislature failed to conform their proceedings to the constitution, hence we find this act to be a valid law in full force. See *Hunt v. Van Alstyne*, 25 Wend., 605; *Coleman v. Dobbins*, 8 Ind., 156; *Knox v. Vinsant*, 27 Ark., 278-9.

By the issues of law upon the demurrer, we are called upon to determine what taxes, state, county and municipal, can be paid in treasurer's certificates, commonly called state scrip.

Various acts have been passed authorizing the issue of treasurer's certificates, their general scope being the same, only varying slightly in their rate of interest and use in tax-paying. These certificates are made payable out of the treasury to the holder of a demand against the state, or bearer, but are only issued upon the presentation of a proper auditor's warrant as an evidence of the state's indebtedness, and when there is not money out of which such warrants can be paid.

By the act of July 23, 1868, these certificates were to be issued on bank note paper, to bear eight per cent. interest, and to be receivable for all state taxes, except taxes for school purposes, and for all other debts due the state except debts due the school fund.

By act of March 24, 1869, such certificates are "receivable in payment for all state, county and municipal taxes, and all debts due the state whatsoever, and all collectors of taxes are hereby required to receive such warrants or certificates when tendered in payment for all taxes, state, county, school or municipal, for the amount and interest borne on the face of such certificates or warrants."

By act of March 16, 1871, it is provided that such treasurer's certificates shall be issued, to bear interest at the rate of five per cent., and "said certificates shall be receivable for

all state and county taxes and all other debts due the state, except interest on the public debt," which act is still in force. Section 88, page 158, revenue act of 1871, and section 89, page 347, revenue act of 1873, after making various provisions as to when and where the sheriff shall appear to receive taxes, etc., provides that he shall receive county warrants in payment of county taxes, the. orders or warrants that may be payable upon presentation of any township, town or city for their respective taxes, and the warrant of the auditor of state or the treasurer's certificate for state taxes.

It is insisted that this act precludes the payment of county and other local taxes in treasurer's certificates. The language used does not convey the idea that the warrants named, alone, are receivable; it appears to be directory to the collector to inform him that such warrants may be received. This is more clearly shown by the manner in which this clause is thrown into the act. The preceding parts thereof provide for what purpose, how much, when and where the sheriff shall collect taxes, and then adds this proviso, by way of explanation, that the several orders are receivable for the several respective taxes. That certainly never carried the intention that nothing but such orders would be received, or that in the absence of such orders a property holder could not pay his taxes in such other funds as by law are receivable for taxes.

If the mere fact of providing that these orders shall be taken excludes payment in treasurer's certificates, or such funds as are receivable under the general law, then these taxes could not be paid in money. We hold these provisions were but directory, and did not change the general law prescribing the funds in which all the revenues may be paid.

The first act made treasurer's certificates receivable for all state debts and taxes except those for school purposes. The next important act, March 24, 1869, drops all exceptions, and

declares in most emphatic and clear terms that these treas-
urer's certificates shall be received for all state, county and
municipal taxes, as well as all debts due the state, and to
make the provisions doubly clear, in the same section, the
legislature repeats the affirmation by saying all collectors of
taxes are required, when tendered, to receive such warrants or
certificates in payment of all taxes, state, county, school or
municipal, for their full amount, etc., thus adding in the word
"school" that no doubt could possibly arise as to the ex-
tended scope the act would have.

The last scrip act, March, 1871, declares that treasurer's cer-
tificates shall bear five per cent. interest, and be receivable
for all state and county taxes, and all other debts due the
state except interest on the public debt.

This act does not repeal the former acts, but only repeals
so much as conflicts with its provisions. To ascertain what is
repealed we need only examine and see wherein its provisions
are in conflict with the former acts.

As affecting the issue, value and use of these certificates,
there are but two changes — first, the rate of interest is five
instead of eight per cent., and an exception as to the tax levied
to pay interest on the public debt. The intention of the
legislature is certainly clear. If these laws are in force, the
state should take these certificates for any and every and all
demands she may have against any one (save the item ex-
cepted), and that counties and towns should take them for all
taxes; and we are clear that this proposition is not affected
by the state authorizing the counties to assess her taxes by
classes, that is, by itemizing her levies, as so much for current
expenses, so much for roads, etc. Whatever sums the county
authorities are authorized to assess and collect of the prop-
erty holders of the county for public purposes is county tax,
and, whether levied in one item and distributed after collec-

tion, or collected in specific divisions, as for roads, for poor, etc., is wholly immaterial. It is a levy for the support of the government, and is necessarily embraced in the term, county taxes; and the various levies made for state purposes are likewise state taxes. If these burdens are not taxes there was no authority under the constitution to impose them; and we have high authority for saying that their character is the same, and that they are taxes whether for specific purposes or not. See *McGee v. Mathis*, 4 Wall., 143. The legislature of Arkansas passed a law to make a special assessment on swamp lands in Chicot county, for their reclamation, a mere local assessment for the benefit of the lands, a betterment, as this court termed it. But the supreme court of the Unites States, through Chief Justice Chase, declared this to be a state tax; that the former law exempting swamp lands from taxation embraced this assessment; there the legislature had only said free from taxation, and had not used the strong words free from all taxes.

In these scrip acts we infer that the legislature meant what it said, and when it said all taxes it included each division of taxes. Why not say state taxes instead of all state taxes, if but general tax was meant? All meant something, and the acts do declare that all state, county and municipal taxes and debts due the state shall be payable in these treasurer's certificates.

But it has been argued that the former scrip acts were temporary, and the last is not so comprehensive in terms. The second section of the act of March 24, 1869, does not declare the act temporary, but conveys the contrary idea, in this language: "That the certificates or warrants issued by the treasurer of the state of Arkansas, under and by virtue of the act aforesaid, and all certificates or warrants which may hereafter be issued by said treasurer in pursuance of

law," etc. This latter clause shows that future issues were contemplated. The first clause referred to such certificates as were issued under the first act (and this whole act of 1869 was but an amendment and a part of the first act), the latter clause to such as might thereafter be issued according to law, and hence gave no intimation of its expiration by any speedy limitation; and the act of March 16, 1871, provides for the issuance of such certificates, bearing five per cent. interest, and declares them receivable for all state and county taxes, and all other debts due the state, except interest on the public debt. There is no express repeal of the former acts, and no repeal whatever, only of such acts as are inconsistent with this last one, and we can discover no inconsistency between this and the former act, only these certificates should bear but five per cent. interest, and be not receivable for amount to pay interest on the public debt, and it appears to us they were "issued in pursuance of law," after the act of 1869, and we perceive no valid objection to their being paid out as provided in that act, saving the exception in the last act, if the later was less comprehensive, which we need not concede.

The rule is, a later act will not repeal a former, unless so inconsistent that both cannot have effect, where no repeal is enacted.

The rule as to repeals by implication is tersely stated by Mr. Justice Miller in the case of *The United States v. Ten Thousand Cigars*, 1 Walworth, Cr. Ct., 126. He says: "It is well settled that no repeal by implication will be allowed, unless it be a necessary and irresistible implication — the statutes must be so inconsistent that if the later stands, the former must entirely fall."

The supreme court of Alabama, in the case of *George v. Skeates & Co.*, 19 Ala., 738, says: "It is true the courts will not construe a prior act to be repealed by a subsequent one,

in the absence of express words of repeal, unless the provisions of the subsequent act are directly repugnant to the former."

The supreme court of Illinois, in the case of *Hume v. Gassett*, 43 Ill., 299, says: "A repeal of a law by implication is not favored; the repugnance between statutes must be so clear and plain that they cannot be reconciled to justify a resort to this doctrine."

The supreme court of Georgia, in *Conner v. Southern Express Company*, 37 Geo., 399, says: "Repeals of laws by implication are not to be favored, and when, by a fair and liberal construction, they can, without torture, be made to harmonize, no court could be justified in deciding that the last act repealed the first."

In *White v. Johnson*, 23 Miss., 68, the supreme court says: "A series of acts upon one subject are to be construed as one whole, and where in a subsequent statute there is no express repeal of a former, the court will not hold the former to be repealed by implication, unless there be a plain and unavoidable repugnancy between them."

In the case of *Lewis, Governor, etc., v. Stout et al.*, 22 Wis., 234, it is said: "The act of March, 1860, to provide for letting the public printing by contract, seems to be a substitute for the previous act on the same subject; and this rule would no doubt govern in its construction but for the language of the fifteenth section. That section provides that all acts inconsistent with the provisions of this act are hereby repealed. This language seems to indicate very clearly that if there were any parts of the former act not inconsistent the same were not repealed.

And *Mitchell v. Printup*, 27 Ga., 469, is to the same effect. It is there held, "the fourth section of the act repeals laws and parts of laws militating against this act. If, therefore,

there be a prior statute having provisions conflicting with some parts of the act of 1858, but not with the whole of it, the conflicting parts of the law are repealed and none others."

In *Furman v. Nichol*, 4 Wall., 61, the supreme court of the United States says: "The courts do not favor repeals by implication, and never sanction them if the two acts can stand together.  *  *  There are in the statute no words of negation, saying no funds other than those specified in the section shall be received," etc.

In our last scrip act there are no words of negation, and nothing saying no other funds than such certificates as specified shall be received — no clause repealing former laws on the subject — and the leading fact to be accomplished was the issue of interest-bearing state certificates for her indebtedness, and the only change was in a mere incident to that object, lessening the rate of interest and excepting the payment of the interest tax.

Then, according to the above decisions, our construction of these acts is quite clear.  And we might show by scores of cases that this is but the announcement of a general rule of law.  See the following and the cases they refer to: Bacon's Abr., Tit. Statutes (D) ; *Pierce v. Bank of Mobile*, 23 Ala., 705 ; *Hawkins v. Hurlburt*, 10 Ohio, 178 ; *White v. Johnson*, 23 Miss. (1 Cush.), 68 ; *Planter's Bank v. State*, 6 S. & M., 628 ; *Elrod v. Gilliland*, 27 Ga., 468.

The next important question is, the power of the legislature to make and enforce such laws in her political subdivisions, the counties and towns.

That absolute sovereignty in a government can do whatever it wills to do, whether just between its subjects or not, is a proposition no statesman or lawyer will dare controvert.  In our states the sovereign power is in the people, and by them it is exercised through the legislature, composed of their rep-

resentatives, except in so far as by compact with the United States, or provisions enacted by our own constitution, it has been limited. Beyond these restrictions, the legislature represents and exercises the sovereignty of the state, and may do whatever a sovereign power can do. Under these limitations every citizen is protected against encroachments upon what is termed his natural or inalienable rights, such as the enjoyment of life and liberty, the acquisition of property, the pursuit of happiness and exemption from infamous punishment, except by the judgment of his peers or the law of the land, etc.; and also, the state is prohibited from impairing the obligation of contracts, the coining of money, or emitting bills of credit, etc.

The certificates drawn in question in this case are so clearly not bills of credit, under the provisions of the federal constitution, that his honor, Judge SEARLE, did not think fit to elaborate an argument on that subject when delivering the opinion of this court in the case of *Ramsey v. Cox*, wherein the question was raised; and we will not now belabor a point by him, with the consent of the court, deemed unnecessary in that case.

Counties and towns are but subdivisions of the state; they are the creatures of legislative will. The people of whom a county or town is composed have no power to resist the legislature in the creation or destruction of their corporate organizations, rights or privileges, only wherein limited by the constitution. The legislature may say how many counties we shall have, where their county seats shall be, etc. May tax lightly or draw heavily upon the people for county purposes, and the people, being but a part of the state, cannot resist; nor can their local officials in any way modify such regulations. But this branch of the present case was argued at some length and authorities cited by the minority

English vs. Oliver, Collector.

of this court, in the case of *Wells v. Cole*, 27 Ark., 603, and rather than reproduce argument and authority, we refer to that opinion as the law upon this point.

We do not assume that towns and other corporations may not be granted the privilege of holding property for certain purposes, and that their vested property rights are within the protection of the constitutions, and such rights cannot be destroyed by a legislative enactment; but not so with their political privileges or public rights, and as shown in the argument above referred to, municipal corporations, or quasi corporations, such as cities and counties, cannot disregard the provisions of the acts of the legislature for the collection of revenue, because they are but its creatures, and have no sovereignty, have no power whatever to collect a single dollar of tax for any purpose whatever, unless it is conferred upon them by the legislature — their taxing powers are all derived from that source, and if they are dependent upon its will for every cent of revenue they raise (and no one, so far as we know, has ever questioned this), how can they set up authority and say they will not receive their revenue in such funds as are provided by law, and that the state cannot compel them to accept such funds as she herself does accept? How the creature swells in importance when the creator's equal does not satisfy her!

It has been urged that the the state's paper is below par, and if counties and towns accept that they will be embarrassed in paying their debts and carrying on local government. We might well admit the force of this argument, if made to a legislature when organizing a policy for the counties and towns, but it is feeble when before a court, attacking the constitutional power of the legislature. If that body should enact that for all purposes the county supervisors should levy a tax of but one mill on the dollar, does any one pretend that

the county court could levy and collect any more? Of course not; but here this powerful argument would have its full force; the county could not pay her debts; she could not build her jails and punish criminals; she could not carry out her county purposes. Suppose she cannot, does that make the law unconstitutional? Does that destroy the power of the legislature to make such a law? It may convict legislators of of a want of statesmanship, but failing to provide adequate means for county purposes does not destroy their acts performed in the exercise of that sovereignty the people have delegated to them. In other words, bad policy cannot destroy the laws they enact, and if a want of par funds to defray any public expense can defeat the tax laws, we fear some would want to extend the rule and refuse treasurer's certificates for state taxes. She has debts to pay, improvements to make, and the other objects for which taxes are levied to carry into effect. A policy that placed public credit below par was injurious to state and county; but the question before the legislature was whether every member of the body politic should suffer in all its parts from the burden bad policy and evil acts had thrown upon the commonwealth, and when they have affirmatively answered, we cannot repeal their act.

The sovereignty of a state ought to place her acts above suspicion, and her dignity and character ought to make the payment of her obligations beyond question — especially so among her own subdivisions; if facts show the contrary, the responsibility must rest upon that department that has failed to perform well its trusts.

While our states hold sovereignty that exempts them from compulsory payment of debts, they have parted with all that would allow them to impair the obligation of a contract, whether made by a state, a county or an individual.

In the case of *Woodruff v. Trapnall*, this state had granted

to a bank a charter, with a provision in it that the notes of the bank should be received in payment of all debts due the state. After this provision was repealed, and a law enacted that nothing should be received in payment of taxes or revenue due the state but par funds, Woodruff — being by a competent court adjudged in default in paying over revenue to the state — tendered these bank notes, which the state, through her officers, refused. The supreme court of the United States, 10 How., 203, says: "Is this a contract? A contract is defined to be an agreement between competent persons to do or not to do a certain thing. The undertaking on the part of the state is to receive the notes of the bank in payment from its debtors. This comes within the definition of a contract. It is a contract founded upon a good and valuable consideration. * * The notes are made payable to bearer, consequently every bona fide holder has a right * * to pay to the state any debt he may owe it in the paper of the bank. It is a continuing guaranty by the state that the notes shall be so received. Such a contract would be binding on an individual, and it is not less so on a state. * * A state can no more impair by legislation the obligation of its own contracts, than it can impair the obligation of the contracts of individuals."

In *McGee v. Mathis*, 4 Wall., 143, wherein this state passed an act authorizing the issuing of transferable swamp land scrip, with which such lands might be entered, and provided they should be free from taxation for ten years, etc., and after the issuance of such scrip said act was repealed and a local tax imposed upon the lands; this scrip was located after the repeal. Chief Justice Chase said: "The contract of the state was to convey the land for the scrip, and to refrain from taxation for the time specified. Every piece of scrip was a contract between the orignal holder and his assigns," etc.,

and held the lands exempt from such tax, and that the issuance of such scrip was a contract not to be receded from.

In the case of *Furman v. Nichol*, 8 Wall., 44, it was held that an act of the legislature of Tennessee, providing that certain bank bills should be receivable for all state dues, was a contract that the state could in no way defeat, but she was bound to accept them, whenever tendered, etc. But we need not now cite numerous authorities on this point, as our Chief Justice, in the case of *Jack v. Gordon*, not yet published, said : " The state, like an individual, if she issues her paper under an agreement that it shall be receivable for such taxes as it may levy, can no more recede from her contract than can the individual," etc. If a state, with all her features of sovereignty, is bound by her legislative contracts, surely her political subdivisions are no less bound.

We therefore hold, in the language of the law, that said treasurer's certificates are receivable in payment for all state, county, school and municipal taxes, and all debts due the state whatever.

This includes all state taxes for general purposes, and all taxes for school purposes, and certificates issued before March 25, 1871, for tax to pay interest on the public debt, and warrants or certificates issued prior to April 28, 1873, for all license upon wholesale or retail liquor dealers, under section 157 of the revenue act of 1873.

And for all county taxes, for all general county purposes, for poor, for bridge, for road, for district school and for county building purposes, and any other dues assessed as a tax for any liability that has accrued since the passage of the act under which the warrants or certificates were issued. This includes all license for hawkers, peddlers, auctioneers, circuses, shows, exhibitions, etc., including all the county license tax on venders of liquors, under section 157, aforesaid

(with only such exceptions as may come within the terms of a contract) ; and also for all municipal taxes, including school, street and license taxes not coming within the inhibitions of previous contract ; and also for all debts due the state, including fines, forfeitures, escheats, dues for estrays, for internal improvement lands, seminary lands, school lands, bank lands, etc. All of which come within the provisions of the above recited acts.

But there may be claims where money alone will be collected as a tax. The legislature taxes, or grants the taxing power for certain purposes ; and counties, cities and towns, under express law, may enter into contracts, and by stipulation in the act of the legislature, and the order of the county board, or an ordinance of a city or town council, may agree to pay by future taxation ; and when such contract is entered into, neither of the parties has a right to annul or impair it. This rule is by no means changed by reason of one party being a town, county or state. It is well settled that a contract once executed binds all parties to it.

In the case of *Van Hoffman v. The City of Quincy*, the city, by virtue of an act of the legislature, had issued her bonds and provided for the payment of interest, etc., by local taxaation. Afterward the legislature repealed the law authorizing the tax.

The supreme court of the United States, 4 Wall., 555, says : " It is well settled that a state may disable itself by contract from exercising its taxing power in particular cases. It is equally clear that where a state has authorized a municipal corporation to contract and to exercise the power of local taxation to the extent necessary to meet its engagements, the power thus given cannot be withdrawn until the contract is satisfied ; the state and the corporation in such cases are equally bound. The power given becomes a trust which the

donor cannot annul and which the donee is bound to execute, and neither the state nor the corporation can any more impair the obligation of the contract in this way than in any other. ·

" The laws, requiring taxes to the requisite amount to be collected, in force when the bonds were issued, are still in force for all the purposes of this case."

See also *The People v. Bond*, 10 Cal., 563 ; *Dodge v. Woolsey*, 18 How. (U. S.), 331 ; *State Bank of Ohio v. Knoap*, 16 id., 369 ; *State of New Jersey v. Wilson*, 7 Cranch, 164 ; *Fletcher v. Peck*, 6 id., 87, and cases therein referred to.

*Bona fide* holders of county bonds issued in pursuance of the act of March 28, 1871, are of this class, and cannot be compelled to accept treasurer's certificates issued after the pas· sage of that act, nor could the counties be compelled to accept such scrip for taxes levied for such purposes, because such change in payment, even if attempted by the state, would be ineffectual and, according to the decisions of the highest court of the country, in conflict with the constitution of the United States. Cases *supra*.

Upon examination, we find the legislature levied a tax of two and a half mills on the dollar to pay interest on the public debt, and provided that such tax should be collected in United States currency and paid into the treasury in the currency collected.

But there is no provision in this or in any prior or subsequent act of the general assembly authorizing the auditor of state to draw upon, or the treasurer of state to pay out, the said taxes so to be collected in United States currency, and without a violation of the constitution and laws of the state, as well as their official obligations, no part of said currency can be paid out of the state treasury. (Section 8, article X, Constitution.) But the taxing power of the state belongs to the general assembly, and as they saw fit to collect moneys, with-

out an appropriation, and leave them for the next assembly to distribute, the courts have no authority to question their policy.

They provided in both acts of 1871 and 1873 that this specific tax should not be paid in auditor's warrants or treasurer's certificates, hence it cannot be paid in such certificates as the petitioner tendered in this case.

The petitioner failed to aver and show the date and character of the obligations, upon which were assessed county interest tax, city sinking fund tax and city railroad tax. The finding is therefore against him upon these items ; and as to them and the tax to pay interest on the public debt, the writ is denied. As to all the other taxes set forth in the petition, a peremptory writ will issue.