The Honorable William A. McLean Prosecuting Attorney Ouachita County P.O. Box 763 Camden, AR 71701
Dear Mr. McLean:
This is in response to your request for an opinion concerning the financing of the Calhoun County solid waste system. Specifically, you have asked whether the quorum court can place a millage increase on the November ballot to support the system. You have indicated that because the cities of Hampton, Thornton, and East Camden Industrial Park already have their own systems, the quorum court contemplates imposing the millage increase only in the unincorporated areas of the county. Additionally, you have noted that currently, the county has an ordinance in place establishing a solid waste system, and providing for the collection of a four dollar per month fee from residents of the unincorporated areas of the county. It is the county's inability to collect this fee which has prompted this inquiry into a proposed millage increase.
In my opinion, your inquiry breaks down into three separate questions which are as follows:
 1. Can a county properly tax its residents through a voter approved millage increase for support of the county's solid waste system?
 2. If so, can the county levy the tax, and collect the increase only in the unincorporated areas of the county?
 3. If not, can the county levy a county-wide millage increase where the benefit of the increase will inure only to the residents of the unincorporated areas?
It should be noted initially that a sold waste disposal system is a service that a county may provide to its residents under A.C.A.14-14-802. Specific provisions governing solid waste disposal include A.C.A. 8-6-201 — 214, and A.C.A. 14-232-101 — 115. The former provides in pertinent part at A.C.A. 8-6-212:
 (a)(1) Each county of the state is authorized to provide, and shall provide, if required to meet the purposes of this subchapter, a solid waste management system adequate to handle solid wastes generated or existing within the boundaries of the county and outside the corporate limits of any municipality in the county. . . .
 (b) A county government shall have the authority to levy and collect such fees and charges and require such licenses as may be appropriate to discharge the county's responsibility for a solid waste management system or any portion thereof. The fees, charges, and license shall be based on a fee schedule contained in a duly adopted ordinance.
 (c) A county may accept and disburse funds derived from federal or state grants, from private sources, or from moneys that may be appropriated from any available funds. . . .
Section 14-232-110 provides in relevant part:
 (a) Counties and municipalities are authorized to impose and collect rates and charges for the services provided by projects of the type authorized by this chapter. . . .
 (b) Counties and municipalities are authorized to impose upon and collect from all persons who can be served by a project reasonable rates and charges for the services of the project, without regard to whether the person desires to utilize the services.
 (c) All or any part of the revenues derived from the rates and charges imposed and collected under the authority of this chapter may be used for accomplishing and carrying out the authorities conferred by this chapter, including the pledging and use of those revenues for the payment of the principal of and interest on bonds issued under the authority of this chapter.
It appears that these two chapters authorize only the imposition and collection of "rates" and "charges" to support the solid waste system, and do not authorize the collection of "taxes" for this purpose. Although A.C.A. 8-6-212(c) provides that the county may accept and disburse "moneys that may be appropriated from any available funds," this phrase seems to contemplate the use of tangible funds, and not those which might be made available through taxation. Thus, it may be argued that the legislature has not specifically authorized cities and counties to pass millage increases for support of their solid waste systems.
However, A.C.A. 26-73-103 probably authorizes a tax of this nature. Subsection (a) of that provision provides:
 In addition to all other authority of local governments to levy taxes provided by law, any county acting through its quorum court . . . may levy any tax not otherwise prohibited by law. However, no ordinance levying an income tax authorized by this subchapter or any other tax not authorized shall be valid until adopted at a special or general election by the qualified electors of the city or in the area of the county where the tax is to be imposed, as the case may be.
See, also, A.C.A. 14-14-807(1).
Thus, a county may pass a millage increase, upon proper election, for support of a solid waste disposal system, unless the tax is prohibited by law. Arguably, the contemplation by existing statutes of "rates" and "charges" rather than "taxes" covers the field of solid waste financing, thus "prohibiting" a millage increase for this same purpose. Because the language of the statutes, however, do not expressly prohibit a tax for that purpose, it is my opinion that a county would be authorized to impose such a tax, as long as it is not prohibited by any other provision of law, such as that found in Constitution of Arkansas Art. 16, 9.*
The first inquiry being answered, it becomes necessary to determine whether such a millage increase can be levied and collected only in the unincorporated areas of the county. Two problems exist with this plan. The first is Art. 16, 5 of the Arkansas Constitution. The second is the fact that a county's authority to tax, and to create taxing districts must come from the legislature. English v. Oliver, 28 Ark. 317 (1873). The only statutorily authorized "taxing district" for the support of a solid waste disposal system is either a county or municipality as discussed above, or a "subordinate service district" under A.C.A.14-14-708 — 711, which again, authorizes only the collection of "rates" and "charges" and not "taxes".
Section 5 of Article 16 of the Constitution of Arkansas provides in pertinent part:
 (a) All real and tangible personal property subject to taxation shall be taxed according to its value, that value to be ascertained in such manner as the General Assembly shall direct, making the same EQUAL AND UNIFORM throughout the State. (Emphasis added).
This provision has been interpreted to require uniform taxation throughout the territory to which it applies. "If a State tax, it must be uniform all over the State; if a county, township, city, town, or district tax, it must be uniform throughout the extent of the territory to which it applies. . . .["] Fletcher v. Oliver,25 Ark. 289, 295 (1868).** See, also, Davis v. Gaines, 48 Ark. 370,3 S.W. 184 (1886); and Woolard v. Thomas, 238 Ark. 162, 381 S.W.2d 453
(1969). The present situation may be distinguished, however, from the cases cited by the fact that the tax imposed would create an "equality of burden." City residents should not be required to pay the tax as they are presumably paying the city for its same service. The residents of the unincorporated areas of the county, who would receive the benefit of the service, would be the ones taxed for its support. Additionally, the subsequent adoption of A.C.A. 26-73-103(1), cited earlier, which speaks of the "area of the county where the tax is to be imposed," arguably stands for the proposition that the legislature envisioned taxes imposed in only part of a county.
There is, however, another provision of Title 14 which is problematic as regards a county's authority to "tax" in only a portion of the county in light of Art. 16, 5's uniformity requirement. The provision relates to subordinate service districts. Section 14-14-708(d) provides:
 (d) Financing. Notwithstanding any provisions of law requiring uniform taxation within a county, a quorum court, by ordinance, may establish subordinate service districts and levy service charges to provide and finance any county service or function which a county is otherwise authorized to undertake.
This section acknowledges the problem posed by Art. 16, 5, and seems to imply that the only way to get around the constitutional uniformity requirement is to create a subordinate service district and to levy "service charges" rather than taxes. It may be reasonably concluded from this provision that the collection of true "taxes" in only one area of the county, such as a subordinate service district, would violate Art. 16, 5's uniformity requirement.
The second problem with imposing a millage increase in only the unincorporated areas of the county is that the creation of a taxing district must be authorized by the legislature. Constitution of Arkansas Art. 2, 23. See, also, Wood v. Henderson, 225 Ark. 184, 280 S.W.2d 226 (1955); State v. Berry,158 Ark. 84, 249 S.W. 572 (1923); Whalely v. Northern Rd. Imp. Dist., 152 Ark. 573, 240 S.W. 1 (1922); 84 C.J.S. Taxation, 306. The legislature has not authorized the creation of a "taxing" district encompassing only part of a county. Although the legislature has authorized various improvement districts, and subordinate service districts, the revenue raised in these districts is comprised of "assessments," and "charges" which are distinguishable from taxes. Kell v. Bella Vista Village Property Owners' Ass'n, 258 Ark. 757, 528 S.W.2d 651 (1975). Thus, it is my opinion that the imposition and collection of a millage increase in only the unincorporated areas of the county is unauthorized.
The third and final question to be resolved is whether the county can impose a county-wide millage increase to support the solid waste facility, in spite of the fact that the city residents of the county are already paying for a similar city service. This course of action is probably contrary to 8-6-212(a)(1), which authorizes the providing of a county solid waste service "outside the corporate limits of any municipality within the county." Additionally, although no relevant Arkansas law prohibits the taxing of members of one taxing district (i.e. the city) for the benefit of another, (i.e. the county)***, such a tax is by general rule prohibited, (See 84 C.J.S. Taxation 38(b)), and in any event will likely create substantial and justifiable displeasure on the part of non-benefiting city residents, displeasure which might potentially be voiced through the mechanism of an illegal exaction suit under Art. 16, 13 of the Arkansas Constitution. It is therefore my opinion that while a county-wide millage increase may not be termed expressly illegal, it could certainly be termed unfair to city residents. Based upon the foregoing law, and the conclusions based thereon, it would appear that the most defensible posture to take is to place greater emphasis upon upgrading the county's fee collection efforts rather than imposing a millage increase.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elana L. Cunningham.
* As will be seen from the conclusion reached in Question 2, this result may only obtain where the city and county have entered into a joint solid waste disposal effort.
** The cited case was decided under a similar provision of the Constitution of 1868.
*** Ordinarily, a county-wide tax would benefit city residents as well. In this unique situation, however, the city residents are already paying for, and receiving the service for which the county seeks to charge them.