## THE STATE OF IOWA;

DES MOINES, JUNE TERM, A. D. 1861.

In the sixteenth year of the State.

---

PRESENT:

HON. RALPH P. LOWE, CHIEF JUSTICE.
   "    CALEB BALDWIN,   } JUDGES
   "    GEO. G. WRIGHT.   }

---

## DUNCOMBE v. PRINDLE.

12   1
114  603
12   1
131  34

1. STATUTE CONSTRUED. An act to extend the boundaries of Kossuth county, approved January 24th, 1855, not only attached townships 90 and 91 of ranges 27 to 30 to Webster county for election, judicial and revenue purposes, but also made them a part of said county in the same sense in which they had, prior thereto, been a part of Humboldt county.

2. RULE OF CONSTRUCTION. When a statute will receive either of two constructions, the one more consistent with provisions of the constitution will be adopted.

3. TITLE OF BILLS: STATEMENT: OBJECT. The attaching of townships 90 and 91 of ranges 27 to 30 to Webster county was a necessary means to the attainment of the object expressed in the title of "an act to extend the boundaries of Kossuth county," approved January 24th, 1855;

VOL. XII.           1

and the provisions of said act making such disposition of said territo-
ry, was not inconsistent with art. 3, § 26, of the constitution of 1846,
which provides that "every act shall embrace but one object, which
shall be expressed in the title."

4. ENROLLED BILL. The enrolled bill, signed by the presiding officers
of the Senate and House of Representatives, and approved by the Gov-
ernor, is the ultimate and conclusive proof of the legislative will.

5. EVIDENCE: RECITALS IN AN ACT: The recitals in the preamble to an
act of the legislature, embracing statements of fact affecting the rights
of third persons, do not import absolute verity or conclusive proof of
the truthfulness of such statements.

6. STATUTE UNCONSTITUTIONAL. The "act explanatory of an act entitled
'an act to create the county of Humboldt, and locate the county seat
thereof," approved March 11th, 1858, does not relate back to the act
of which it is amendatory; and as an independent act it is invalid
because it has never been submitted to a vote of the people of the
counties affected by it, as required by § 30, art. 3, of the Constitution
of 1857.

*Appeal from Webster District Court.*

TUESDAY, DECEMBER 4, 1860.[1]

THIS suit was instituted in Webster county, upon a prom-
issory note for one hundred and twenty-five dollars, dated
October, 1858, and payable at thirty days. The defendant
set out by way of answer, that he resided in Township 90,
range 28, west of the 5th P. M., which is situated within the
boundaries of Humboldt county, as he claimed would more
fully appear by an act approved January 28, 1857, entitled
"an act to create the county of Humboldt;" and "an act
explanatory of the act, entitled an 'act to create the county
of Humboldt;" approved March 11th, 1858, in which it is
alleged that in the first named act, townships 90, 91, 92 and
93 in ranges 27, 28, 29 and 30, were erected into the county
of Humboldt, according to the language of the original bill
as passed, but that in the printing and publication of this

---

1. The publication of this case was delayed by the pendency of the petition for
a rehearing.

Duncombe v. Prindle.

act, township 90, in the ranges of 27 to 30 inclusive, were omitted. He claimed that this omission was afterwards supplied by the explanatory act aforesaid, (of March 11th, 1858,) and therefore, not being sued in his own proper county, he demanded a change of venue to Humboldt county.

The plaintiff in his replication controverts the affirmative statements in the answer, and making profert of a certified copy of the original manuscript act, approved January 28th, 1857, as found enrolled in the Secretary's office, avers that there is *in fact* no conflict or discrepancy between *it* and the same act as published. Also, that the facts set out in the preamble of the supposed explanatory act of 1858 are untrue. He alleges, that if by this last act it is insisted that township 90, of the ranges aforesaid, has been made a part of Humboldt county, that then said law is inoperative and can have no binding effect until upon being submitted to the people of Webster and Humboldt counties, at a general election, it shall be approved by a majority of the votes of each county cast for and against it; and he avers that no such vote has been taken.

To this replication the defendant interposed a demurrer, which was overruled by the court, judgment rendered for the plaintiff, on the note, and defendant appealed.

*Kasson, Cole and Garaghty* presented the case to the court on the part of the appellant, orally and by written arguments. The following points and authorities are extracted from the written arguments on file : —

I. Humboldt county was created by an act approved January 15th, 1851. Pamphlet Laws of 1851, page 34, § 28. As then established it embraced townships 90—93 in ranges 27—30.

II. By "an act to extend the boundaries of Kossuth county and to locate the seat of justice thereof," approved January 24th, 1855, the counties of Bancroft and the north half of Humboldt county "were *united into* one county", to be

called Kossuth. It is provided by the last half of the second section "that townships number 90 and 91 of ranges number 27, 28, 29, 30, which have heretofore been a part of Humboldt county, shall be, and are hereby attached to Webster." Pamphlet Laws of 1855, p. 210, ch. 141. By chapter 142 of the acts of the same session, Humboldt county was attached to Webster "for election, judicial and revenue purposes."

1. When the legislature designed a permanent union of the territory embraced in Bancroft and the north half of Humboldt counties it used the phrase: "*united into one county*." Townships 90 and 91 are *attached to Webster county*. "*United into*," signifies a permanent merger of the two into one; while the word "*attach*," when used *in pari materia* signifies a temporary relation which preserves the duality of existence.

(*a.*) No other construction will render chapters 140 and 141 consistent with each other.

(*b.*) This construction is also supported by the title of the act. While the title will not control the plain intent of the statute, where the words are doubtful it may be resorted to to remove ambiguity. *The United States* v. *Fisher*, 2 Cranch 386; *United States* v. *Palmer*, 3 Wheat. 610; *The State* v. *Stephenson*, 2 Bailey 304; *Burgett's Lessees* v. *Burgett*, 1 Ohio R. 479. The Constitution in force when this law was enacted, provided that "every law shall embrace but one object which shall be expressed in the title." Const. 1846, art. 3, § 26. The same rule prevails in England where no such constitutional importance attaches to the title of a bill. *Stradling* v. *Morgan*, Plowdon 203; *King* v. *Cartright*, 4 T. R. 490; *King* v. *Marks*, 3 East. 160.

2. The last clause of § 2 chapter 41, acts of 1855, (which attaches the territory in controversy to Webster county) is unconstitutional because its object is not expressed in the title. Const. 1846, art. 3, § 26.

(*a.*) The annexation of the territory in controversy to

Webster county was not necessary as a means to the attainment of the object expressed in the title of the bill, for the reason that Humboldt was not an *old county*.

(*b*.) The effect of the bill was to enlarge the geographical limits of Webster county, an object not expressed in the title.

(*c*.) The constitution provides that " every bill shall embrace but *one* object." This embraces *two*.

3. So far as the object of the bill is stated in the title it is constitutional; and is void only as to that part which it is alleged extends the boundaries of Webster county. *Edwards* v. *Pope*, 3 Scam. 465; *Ely* v. *Thompson*, 3 Wash. C. C. 313; *Gibbons* v. *Ogden*, 9 Wheat. 1 and 203; *Clarke* v. *Ellis*, 2 Blackf. 8 and 10; *Fisher* v. *McGirr*, 1 Gray 22; *Commonwealth* v. *Kimball*, 24 Pick. 361; *Norris* v. *The City of Boston*, 4 Met. 288; *Santo* v. *The State of Iowa*, 2 Iowa 165.

III. " An act to create the county of Humboldt and to locate the county seat thereof " was approved on the 28th day of January, 1857. Pamphlet Laws of 1857, page 199. On the 11th day of March 1858, " an act explanatory of an act, entitled ' an act to create the county of Humboldt, and locate the county seat thereof," was approved, as follows :

" WHEREAS, an act was passed by the General Assembly, which convened at Iowa City, on the first day of December, 1856, entitled ' an act to create the county of Humboldt and locate the county seat thereof,' which act was approved January 28th, 1857, by which act townships 90, 91, 92 and 93 of ranges number 27, 28, 29 and 30, west of the 5th principal meridian, were constituted into the county of Humboldt, and,

" WHEREAS, by mistake the said act was printed in the public laws so that township number 90 in said ranges were omitted and left out, and whereas said original bill, as the same was passed, has been lost, and can not be found, therefore,

" SECTION 1. Be it enacted by the General Assembly of the State of Iowa, that the first section of the act entitled ' an

act to create the county of Humboldt and locate the county seat thereof,' approved January 28th, 1857, be so construed as to include township number 90 in said ranges mentioned in said section, together with the townships set forth in said section.

" SEC. 2. The county of Humboldt is hereby declared to include townships number 90, 91, 92 and 93 of ranges 27, 28, 29 and 30 of the 5th principal meridian."

1. In a matter of public law, not aiming to affect private rights, the law making department of government, and that alone, has inherent authority to find, declare and correct its own records, doing it under the sanction of official oaths; and the truth of such action regularly had, can not be impeached, unless by virtue of other constitutional provisions. *Fletcher* v. *Peck*, 6 Cranch 131; *Commonwealth* v. *Breed*, 4 Pick. 464; *Pacific Railroad Co.* v. *The Governor*, 23 Mo. 369; *Rex* v. *Sutton*, 4 Maul. & Selw. 532. *Clare* v. *The State*, 5 Iowa 509, only estops the citizen from denying the accuracy of the enrolled bill, but does not estop the legislature.

2. The correction of the record is the scope and purview of the act of 1858; and this act is *in pari materia* with the act of 1857; and both are to be taken together as constituting one act; the last declaratory of the contents of the first, and having relation back to its date *ex vi termini; United Society* v. *Eagle Bank*, 7 Conn. 457–470; *Duck* v. *Addington*, 4 T. R. 447; *Earl of Aylesburg* v. *Pattson*, Doug. 30; *Rex* v. *Loxdale*, 1 Burr. 445; *Board of Commissioners* v. *Cutter*, 6 Ind. 354; Sedg. on Const. Law, 250.

3. By this construction there is no conflict with the constitution, and the law remains a valid act of legislation.

*John F. Duncombe*, with *G. H. Bassett*, for the appellee.

I. The explanatory act of 1858 is unconstitutional in this, that it has never been submitted to a vote of the people in the counties affected by the change, as required by art. 3, § 30 of the Constitution of 1857.

II. The preamble to the act of 1858 is not conclusive evi-

Duncombe v. Prindle.

dence of the truth of the statements therein made. 1 Kent. Com. 460; *Hogg* v. *The Zanesville Canal and Manufacturing Company*, 5 Ohio 410; Dwarris on Stat. 20; Bouvier's Law Dict. title "Preamble;" 4 Phillips' Ev. Cow. & Hill's Notes, ch. 2, p. 251; *Elmondorff* v. *Carmichael*, 3 Litt. 482.

III. The enrolled act in the Secretary's office is ultimate proof of the contents of the statute. *Clare* v. *The State of Iowa*, 5 Iowa 510; Code of 1851, § 19.

IV. The "act to extend the boundaries of Kossuth county and to locate the seat of justice thereof," (chap. 141, Laws of 1855,) is not inconsistent with art. 3, § 26, Const. of 1857. The disposition of the territory attached to Webster was, under art. 11, § 2 of the same constitution, necessary as a means to the attainment of the object expressed in the title of the bill. *The State of Iowa ex rel Weir* v. *The County Judge of Davis County*, 2 Iowa 280; *Morford* v. *Unger*, 8 Iowa 82.

LOWE, C. J.[1]—The object of this proceeding is obviously to obtain a judicial construction of the acts described in the pleadings, for the purpose of determining whether townships 90–91, of ranges 27 to 30, are within the territorial area of Webster or of Humboldt county. If in the former, the judgment below should be affirmed. If in the latter, then it should be reversed. Originally this township, with the ranges above disignated, were embraced within the boundaries of Humboldt county, as defined by an act approved January 15th, 1851. At that time, by the same act, the boundaries of Kossuth and Bancroft counties, situated immediately north of Humboldt, were established. Afterwards, on the 24th of January, 1855, the legislature, by an act entitled, "an act to extend the boundaries of Kossuth county," declared that the counties of Kossuth and Bancroft, and the north half of Humboldt county, should be united into one county, to be called Kossuth. In the same act it is declared,

---

1 BALDWIN J. was not present and took no part in the determination of this case.

that "townships 90 and 91 of ranges 27 to 30 (being the south half,) which have heretofore been a part of Humboldt county, shall be and are hereby attached to Webster."

Counsel for the defense claim that this last clause of the law does not constitute these two townships a part of the territorial limits of Webster, but that it simply attaches them for election, judicial or revenue purposes, and that territorially they still remain and constitute the county of Humboldt. Hence they argue, that township 90 never did form any part of the area of Webster county. To this interpretation several objections present themselves: *First*, That they were attached for election purposes, &c., is a matter of inference and not legislative expression; an inference too which is not warranted either by the natural import of the language used, or its grammatical construction. For instance, the expression, (referring to these townships,) "which have heretofore been a part of Humboldt county, shall be and are hereby attached to Webster," convey quite clearly to our minds the impression that they were to constitute a part of Webster in the same sense that they had been a part of Humboldt. *Second*, If we adopt the construction contended for by counsel, then we must hold that the act extending the boundaries of Kossuth is unconstitutional; for by uniting the north half of Humboldt to Kossuth, the remainder of its contents is reduced below four hundred and thirty-two square miles, which is expressly prohibited by the constitution. If we adopt the other theory, that by this act the south half of Humboldt county was merged into Webster, as the north half had been into Kossuth, this infringement of the constitution is avoided; and the rule we recognize to be a sound one, that where a statute is susceptible of two constructions, one of which consists with the constitution, and the other violates it, that the former should be adopted by the court. We cannot therefore conclude that the legislature intended to disregard the express prohibition of the constitution, by continuing Hum-

boldt *in esse*, and leaving these two townships in it as a part of its constituent being. Besides, if they were simply attached to Webster for a specified and limited purpose as claimed, it would have been so stated expressly, as it has been in all other known cases of the kind. But counsel for the defense again insist that this must have been the intention, because on the same day was passed and approved another statute, *pari materia*, attaching Humboldt to Webster. But this is true also of Bancroft, although its existence as a county had been entirely merged into that of Kossuth; and this only proves that when this last law was drafted, Humboldt and Bancroft had separate existences, and when it was passed they had lost their identity by being incorporated into other counties, which was overlooked by the legislature.

There are one or two other reasons which impress our minds with the belief that these townships were attached to and made, for all purposes, a part of Webster. One is, that three years after this the legislature passed an act creating the county of Humboldt anew, thereby distinctly recognizing, as we conceive, its non-existence prior to that time. And in harmony with this idea and the facts of the case, the defendant makes the following statement in his answer, to-wit: "And said defendant further avers and says that said township and ranges (meaning township 90 and ranges from 27 to 30,) were taken from Webster county and added to Humboldt county, by an act of the General Assembly of the State of Iowa, entitled, 'an act to create the county of Humboldt, and locate the county seat thereof,' approved January 28th, 1857." It will be perceived by this extract from the answer of the defendant, that he gave to the act of 1855 the same construction we give it; and which it afterward received by implication from the legislature, but which, in argument by some of the counsel for the defense, is ignored.

Conceding, however, that the act of January 24th, 1855, did attach and constitute townships 90 and 91, a part of

Webster county, still it is objected that this is an object distinct and different from that expressed in the title of the act, and therefore void and of no effect under the constitution. At first blush this objection would seem to be well taken. But it is asked, whether after all it is not more technical than substantial. The language of the constitution on this subject is this, that "every act shall embrace but one object which shall be expressed in the title." Now the legislature having the power to take the north half of Humboldt and add it to Kossuth, may properly employ all the means necessary to accomplish that end which shall not contravene the constitution. This could not be done however, and leave townships 90 and 91 remaining in Humboldt, because that would reduce this county below the constitutional number of square miles. Their annexation therefore to Webster or some other county became a necessity connecting itself with the main object, which was the enlargement of Kossuth; nor was it in the sense of the constitution a distinct subject of legislation unconnected with the object expressed in the title.

Having now found that township 90 of ranges 27 to 30, inclusive, was in Webster county, (a fact, which although conceded in the defendants pleadings, presented to our minds the principal difficulty in the case,) we come now to inquire how, and when, if ever, it was taken from Webster and annexed to Humboldt. The defendant claims that this was done by the act approved January 28th, 1857, entitled "an act to create the county of Humboldt and locate the county seat thereof." This act as we find it published with the statute laws of that session, does not include township 90 of the ranges aforesaid, but does define the boundaries of Humboldt as being composed of townships 91, 92 and 93 of ranges 27 to 30, which make up the four hundred and thirty-two square miles required by the constitution. But it is claimed that in the publication of this law, township 90, which was in the original bill as it was passed by the General Assembly, through mistake was left out or omitted. We have

made a personal examination of the original bill, as we find it enrolled, bound up and preserved in the Secretary's office, and have discovered no discrepancy whatever between it and the same act as published, but on the other hand an entire agreement between the two. We did not perceive any errors or omissions, or space left where the words "township ninety," should have been written; but it seemed to be complete, regular and fair in all its parts. This enrolled bill, thus filed and preserved in the Secretary's office, is the authenticated copy of the real bill which the General Assembly passed, and is the ultimate proof of the true expression of the legislative will, as this court have before held; *Clare* v. *The State of Iowa*, 5 Iowa 510. And that for the obvious reason that it is *the* bill which received the signatures of the officers of both branches of the legislature, after a committee appointed for that purpose had compared it with the law as passed, and reported it a correct copy of the same. Behind this it is impossible for any court to go for the purpose of ascertaining what the law is. There is no other bill, original or a copy, to which the signatures of the President of the Senate and Speaker of the House of Representatives are affixed, or to which is appended the approval by the Governor. And when counsel speak of some other original bill than this, in which the township 90 was embraced, we confess we are at a loss to conceive what they mean. Are we to suppose that the enrolling clerk, and the committee appointed to examine and report upon the accuracy of his work, have all been guilty of laches or corruption, especially in the absence of any competent proof to that effect?

But the defendant insists that he has furnished such proof in the facts recited in a preamble to a certain explanatory act, subsequently passed by the legislature, on the 11th of March, 1858. And this brings us to consider the effect of this preamble as a matter of evidence. The argument is that the facts set out in the preamble import absolute verity and can not be contradicted by evidence *aliunde*. Indeed,

this is the principal question of law raised by the defendant's demurrer to the plaintiff's replication. The preamble prefixed to the explanatory act of 1858 in question alleges the existence of three important facts, as the motive or occasion for passing the act; *First,* That the act of 1857, creating and defining the boundaries of Humboldt county, included townships 90, 91, 92 and 93, of ranges 27, 28, 29 and 30; *Second,* That in printing and publishing said act township 90 was left out by mistake; *Third,* That the original bill, as the same was passed, had been lost. These facts were controverted by the plaintiff, in his replication, who produced a certified copy of the original bill, which clearly disproves the existence of the same. To this the defendant demurred, basing the same upon the idea that these facts are conclusive in law and can not be denied, or drawn in question. We can give no such effect or weight to facts recited in a preamble. The proposition of law raised by the demurrer is unsustained by the American authorities. Sedgwick in his late treatise on the rules which govern the interpretation and application of statutory and constitutional law, a work of a very high order of merit, says : "That, as between individuals whose rights are affected, the facts recited ought not to be evidence. We well know that such applications are made frequently *ex parte.* Once adopt the principle that such facts are conclusive, or even *prima facie* evidence against private rights, and many individual controversies may be prejudged and drawn from the sanctions of the judiciary into the vortex of legislative usurpation. The appropriate functions of the legislature are to make laws to operate on future incidents, and not a decision or forestalling of rights accrued or vested under previous laws. Such a preamble is evidence that the facts were so represented to the legislature, and not that they are really true." Pages 56–57, and authorities cited. The propriety and truth of the foregoing observations are strikingly illustrated in the history of this case. The production of what we understand

to be the original bill squarely controverts every fact stated in the preamble. Yet we are asked to shut our eyes to this important fact, and to believe upon the authority of a preamble, that no such law in fact ever did pass.

We notice one other position of the defence, which is, that the act of the 11th of March, 1858, at all events places the township in dispute in the county of Humboldt. This act is inoperative and can have no binding effect, for the reason that it was passed under the new constitution, the 30th section and 3d article of which declares that no law changing the boundary lines of any county shall have effect, until, upon being submitted to the people of the counties affected by the change, at a general election, it shall be approved by a majority of the votes of each county. It is not pretended that this was done, but this difficulty is sought to be obviated by claiming that this last act is simply explanatory of the act of 1857; that it relates back and becomes a part of that act, which was not obnoxious to this objection, because it passed under the old constitution. The error, however, of this argument consists in assuming that the facts recited in the preamble of the last act are true; and that the law of 1857 possessed doubts, omissions or ambiguities which needed explanation. Now neither the one nor the other of these hypotheses is true; and we must regard the act, with its preamble attached, as an original and independent act, and therefore void, because in conflict with the constitution. This point is one of some nicety, and was ingeniously presented by counsel; but this opinion is already too long to discuss it further. We are compelled to conclude that township 90, in ranges 27 to 30, west of the 5th principal meridian, is still in and forms a part of Webster county. Of course we can pay no attention to conjectural surmises and vague suspicions, which have been made and entertained in relation to some unfairness which may have been practiced in the final passage of the act of 1857, creating the county of Humboldt. If such was the case no evidence of the fact

have been presented to us.   We have had to deal with the case as made; and the record as spread before us.

Affirmed.