THE STATE OF FLORIDA EX REL. W. A. TURNER AND H. D. MASON, PLAINTIFF, VS. W. A. HOCKER, CIRCUIT JUDGE, DEFENDANT.

CONSTITUTIONAL LAW—JOURNALS OF LEGISLATURE AS EVIDENCE—MANDAMUS TO COMPEL EXERCISE OF JURISDICTION—TITLE OF LEGISLATIVE ACT—AMENDING ACT BY TITLE—PASSAGE OF BILLS BY LEGISLATURE.

1. Mandamus is the proper remedy to compel the exercise by a court of jurisdiction that it clearly possesses where it refuses to act.

2. Where an alternative writ of mandamus is granted against a Circuit Judge to compel the exercise of jurisdiction over causes.

JUNE TERM, 1895. 359

State ex rel. Turner and Mason v. Hocker, Judge.—Syllabus.

pending in two counties recently annexed by legislative act to the judicial circuit presided over by him, and he bases his refusal to exercise such jurisdiction upon the unconstitutionality of the legislative act bringing said territory within his jurisdiction, alleging it to be unconstitutional because of the manner in which it was enacted by the Legislature, such issues can properly be raised and presented by demurrer to the alternative writ of mandamus.

3. The Journals kept by the two Houses of the Legislature of their proceedings are public records of which the courts of the State will take judicial notice.

4. Acts of the Legislature duly enrolled and signed by the officers of the two houses and filed in the office of the Secretary of State with the approval of the Governor thereon, are *prima facie* valid and authoritative laws, but the journals of the two houses that enacted them may be resorted to ·to ascertain whether the mandatory requirements of the Constitution have been complied with by the Legislature in their enactment, and if such journals show explicitly, clearly and affirmatively that any essential constitutional requirement has not been complied with, or if they fail to show any essential step in the process of enactment that the Constitution expressly requires them to show, such for example, as the entry of the ayes and noes upon the final passage of any bill in either house, then such journals would prevail as evidence, and the enrolled bill, as evidence of law, would have to fall.

5. In passing upon the constitutionality of statutes generally, no matter from what standpoint the assault thereon may be made, it is a well-settled and cardinal rule that nothing but a clear violation of the Constitution will justify the courts in overruling the legislative will; and where there is a reasonable doubt as to the constitutionality of an act it must be resolved in favor of the act, and it should be upheld.

6. Constitutional provisions prescribing what shall be the contents of titles to acts, and requiring each house of the Legislature to read each bill on three several days, unless such reading be properly dispensed with by a two-thirds vote, and requiring the reading of bills and the entry on the journals of the ayes and noes on the final passage of every bill, are *mandatory;* and it is the duty of the courts to adjudge the law invalid and void in cases where it is clear, beyond reasonable doubt, that these provisions have been violated or ignored; but these provisions

should receive, not a technical construction, but a reasonable one; and, looking to the evils intended thereby to be remedied, only such legislative acts should be overthrown as are clearly and obviously offensive to their spirit and meaning.

7. Chapter 4227 laws, approved June 1st, 1893, entitled: "An Act to amend sections 1363 and 1364 of Chapter three of Title three of the Revised Statutes of the State of Florida, defining the fifth and sixth judicial circuits of Florida," is not unconstitutional and void. Its title does not embrace more than one subject and matter properly connected therewith; and its subject is sufficiently expressed in its title.

8. The constitutional inhibition against the revision or amendment of statutes or sections of statutes by their titles only, does not apply to amendments that are effected by implication. Our Constitution does not prohibit the repeal of a statute or part of a statute by implication.

9. Where one house of the Legislature originates and passes a bill through its three constitutional readings and reports it to the other house, and the latter passes the bill with amendments that it has adopted that are germane to its general subject, either to the body of the bill or to its title, it is not necessary that the house where the bill originated shall do anything more than to *concur* by vote in the amendments made. It is unnecessary in such a case to re-read the bill three times again in the house of its origin.

10. Our Constitution does not require that the journals should show affirmatively that a bill was read "*by sections*" on its final passage, and if they do not so show, the presumption, in the absence of affirmative evidence to the contrary, would be that it was read *by sections* as required.

This is a case of original jurisdiction.

The facts in the case are stated in the opinion of the court.

*R. L. Anderson*, for Plaintiff.

*W. A. Hocker in pro per* for Defendant.

TAYLOR, J.:

This is an original proceeding in mandamus brought in this court on the relation of W. A. Turner and H. D. Mason, against Hon. W. A. Hocker, Judge of the Fifth Judicial Circuit of Florida, to require him to entertain, hear and determine a cause pending in the Circuit Court of Citrus county, Florida, by bill in equity brought by the said Turner and Mason for the removal of cloud on title, in which J. R. Blakiston and Willie A. Blakiston, his wife, are defendants.

The alternative writ alleges, in effect, that Chapter 4227, Laws of Florida, approved June 1st, 1893, transferred the said county of Citrus to, and made it a part of, the Fifth Judicial Circuit of Florida, and that the defendant, Hon. W. A. Hocker, being the Judge of said Fifth Judicial Circuit, has jurisdiction of matters pending in said Circuit Court of Citrus county, but that he declines and refuses to hear and determine the matters submitted to him in and by said cause in equity, alleging as his only reason that he has no jurisdiction as such Judge of the Fifth Judicial Circuit of Florida over causes pending in the Circuit Court of Citrus county. That said cause in equity is still pending in said Circuit Court of Citrus county, and that the relators are entitled to have the same heard and determined.

The defendant demurs to the alternative writ, and, as ground of demurrer, contends that said Chapter 4227 of the laws, approved June 1st, 1893, is unconstitutional and void: 1st. Because the act embraces more than one subject and matter properly connected therewith. 2d. Because if it contains but one subject, that subject is not expressed in its title. 3d. Because it amends section 10 of Article V of the Constitution,

and said section is not re-enacted and published at length in the said act. 4th. Because said act was first introduced in the Senate on May 5th, 1893, as Senate Bill No. 207, its title then being "An Act to amend sections 1362 and 1364 of Chapter 2 of Title 2, Revised Statutes of the State of Florida;" was passed through the Senate with that title; was certified to the House by that title; was considered on the third reading in the House by that title; was amended by striking out all after the enacting clause, and passed in the House by that title; and after its passage a new title was given the bill to germane to the original title; and because the act, as passed, was never considered in the Senate at all, except simply to concur in the amendment made in the House; was not read in the Senate at all, thereby ignoring the forms of procedure for the passage of bills provided in section 17 of Article III of the Constitution of Florida. 5th. Because the said bill was not read by sections on its final passage in either house, and the fact that it was read by sections does not appear in the journals, as required by section 17 of Article III of the Constitution of Florida.

It is well settled that the journals kept by the two houses of the Legislature of their proceedings are public records of which the courts will take judicial notice. People vs. Mahaney, 13 Mich. 481; Cooley's Const. Lim. (5th ed.) p. 163 and cases cited. The assaults made upon the constitutionality of the act in question being predicated upon the manner in which it was enacted, as exhibited by the journals, the issues raised thereby can properly be presented, as they have been here, by demurrer to the alternative writ. Acts of the Legislature duly enrolled and signed by the officers of the two houses and filed in the office of the Secretary of State with the approval of the Governor

JUNE TERM, 1895. 363

State ex rel. Turner and Mason v. Hocker, Judge.—Opinion of Court.

thereon, are *prima facie* valid and authoritative laws, but the journals of the two houses that enacted them may be resorted to to ascertain whether the mandatory requirements of the Constitution have been complied with by the Legislature in their enactment, and if such journals show explicitly, clearly and affirmatively that any essential constitutional requirement has not been complied with, or if they fail to show any essential step in the process of enactment that the Constitution expressly requires them to show, such, for example, as the entry of the ayes and noes upon the final passage of any bill in either house, then such journals would prevail as evidence, and the enrolled bill, as evidence of the law, would have to fall. State *ex rel.* Markens vs. Brown, 20 Fla. 407.

The provisions of our Constitution alleged to have been violated in the enactment of this statute are as follows: Section 16 of Article III: "Each law enacted in the Legislature shall embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title; and no law shall be amended or revised by reference to its title only; but in such case the act, as revised, or section, as amended, shall be re-enacted and published at length." Section 17 of Article III: "Every bill shall be read by sections on three several days in each house, unless, in case of emergency, two-thirds of the house where such bill may be pending shall deem it expedient to dispense with this rule; but the reading of a bill by sections on its final passage shall in no case be dispensed with, and the vote on the final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the journal of each house."

In passing upon the constitutionality of statutes generally, no matter from what standpoint the attack

thereon may be made, it is a well-settled and cardinal rule that nothing but a clear violation of the Constitution will justify the courts in overruling the legislative will; and where there is a reasonable doubt as to the constitutionality of an act it must be resolved in favor of the act, and it should be upheld. It is further well-settled that constitutional provisions for the government of the legislative department in the enactment of laws, like those quoted above, are *mandatory*, and that it is the duty of the courts to adjudge the law invalid and void in cases where it is clear, beyond reasonable doubt, that these provisions have been violated or ignored; but these provisions should receive, not a technical construction, but a reasonable one; and, looking to the evils intended to be remedied thereby, only such legislative acts should be overthrown as are clearly and obviously offensive in their spirit and meaning. See the numerous cases cited in the notes to Davis vs. State, 61 Am. Dec. 331.

The first objection raised by the respondent's demurrer is, that the act embraces more than one subject and matter properly connected therewith. The contention in support of this objection is, that the act deals with two separate, independent and distinct subjects, in that it undertakes to change the fixed boundaries of two judicial circuits, instead of one only—the contention being that each of the seven judicial circuits into which the State has long since been divided comprise a distinct and independent subject that can not be dealt with in the same act that deals with any other of said circuits. We can not agree with this contention. Geographically the judicial circuits into which the State is divided are separate and distinct, each of them presided over by different judges; but, from the standpoint of the constitutional inhibition

against the legislature dealing with more than one subject in the same act, they all fall within and belong to the one general subject of "Judicial Circuits," stripped of the sub-dividing numbers by which they are individually designated. Whether the Legislature undertakes by an act to re-define the boundaries of all seven of such circuits, or of only two or more of them, it is still dealing with the one general subject—"Boundaries of Judicial Circuits." The Constitution of 1868, by section 3 of Article XVI, fixed and defined the boundaries of the seven judicial circuits of the State, but so fixed them that they could not be disturbed except by an amendment of the Constitution. The Constitution of 1885, by section 10 of Article V, defines them in the same way as did the Constitution of 1868, but expressly provided that its definition of them could be changed by the Legislature. Both instruments deal with them collectively as one subject. Under the Constitution of 1885 the Legislature would clearly have the right to re-define the boundaries of *all seven* of the circuits by one act entitled, "An act to define the judicial circuits of Florida." In such a case, if *each* of the circuits, considered as a unit that goes to make up the whole, could be dealt with under such a title, expressing but the one subject of "judicial circuits," it would seem to follow as a corollary that it would be perfectly competent for the Legislature to deal with any two or more of such units by one act with a title sufficient to confine its provisions to the two units of that general subject treated thereby. If the individual circuits, considered as units, could be properly dealt with in the one act as being germane to the one general subject therein expressed, it would seem clearly to follow that it would be entirely competent to deal with any two or more of them by one act.

whose title still sufficiently expressed its subject to be "the partial defining of judicial circuits." The effect that an individualizing of them in the title of such an act would have, would not be to spring two separate and independent subjects into creation, but would be simply to restrict and confine the substance of the act to the individualized and restricted *portion of the general subject* of "boundaries of judicial circuits," expressed in such title. Were the contention of the respondent a sound one, then it would be necessary, if the Legislature desired to re-define the boundaries of each and every of the seven judicial circuits, to pass seven different acts, each of them dealing with its own individual subdivision of the general subject of judicial circuits. Clinton Township vs. Draper, 14 Ind. 295; Haggard vs. Hawkins, Ibid, 299; Duncombe vs. Prindle, 12 Iowa, 1; Board of Supervisors of Ramsey County vs. Heenan, 2 Minn. 330. The title of the act in question is as follows: "An act to amend sections 1363 and 1364 of Chapter three of Title three of the Revised Statutes of the State of Florida, defining the Fifth and Sixth Judicial Circuits of Florida."

The second ground of the demurrer is, that this title does not express the subject of the act; that the real purpose of the act is to transfer the two counties of Citrus and Hernando from the Sixth to the Fifth Circuit, and that this purpose is not even intimated in the title. There is no merit in this contention. The act, in carrying out the expressed purpose of its title, to *define* the Fifth and Sixth Judicial Circuits, does transfer the two counties as stated, but such transfer is entirely incident to the accomplishment of the object of the act as declared in its title. The Fifth and Sixth Judicial Circuits at the time of the introduction of this act in the Legislature, were both well and perfectly de-

fined, and had been since the adoption of the Constitution of 1868; and when it was proposed in 1893 to enact a law whose declared object was to define such circuits, certainly no one could possibly have been misled into the supposition that such proposed law intended merely to reiterate the long-standing definition thereof. They were then already defined, and a law proposing at that time to define them necessarily conveyed the idea that some *change* was proposed in the former definition. We all know that the capital of the State is at present fixed and established at Tallahassee, and were the Legislature desirous of *changing* the location of its seat of government to some other point, we apprehend that a bill for that purpose would be sufficient were it entitled "An act to fix and establish the seat of government of the State of Florida." To hear such a title read the Legislature itself and the public would naturally expect that a change of the already fixed and established location was intended. When already fixed and defined boundary lines are proposed by a new measure "to be defined," it is tantamount to saying that lines already defined will be redefined, changed, altered, and a new definition and fixing thereof established, different from the old.

The third ground of the demurrer is, that the act amends section 10 of Article V of the Constitution, and that said section is not re-enacted and published at length in the said act. The section of the Constitution referred to provides that "until otherwise defined by the Legislature the several judicial circuits of the State shall be as follows:" (then follows the enumeration of the various counties that shall belong to each of the seven circuits). The commissioners, in compiling our Revised Statutes, have carried this constitutional definition of the judicial circuits forward, making it, with-

out change, the subject of Chapter 3 of Title 3 of the revision, making the definition of each judicial circuit the subject of a separate section to itself. Sections 1363 and 1364 comprise the same definition of the Fifth and Sixth Judicial Circuits as that given to them by the Constitution. So that we may say, with propriety, that Chapter 3 of Title 3 of the Revised Statutes, in so far as the definition of the several circuits is concerned, is but a reiteration of section 10 of Article V of the Constitution. In giving this act a title, the Legisla- ture saw proper to declare therein that its purpose was to amend sections 1363 and 1364 of the Revised Stat- utes, without any reference whatever to the section of the Constitution that those two sections in part reiter- ated. The act does not in its title purport to amend the section of the Constitution, but does expressly pur- port to amend the two named sections of the Revised Statutes, and it does set out those two sections, as amended, in full and at length. It is true that it nec- essarily effects change of the definition made in and by the constitutional section mentioned, but that change is by *implication*, and not from the avowed ob- ject of the law as expressed in its title. The title of the act would have been complete had it been simply "An act defining the Fifth and Sixth Judicial Circuits of Florida," and it was wholly unnecessary to have re- ferred in the title of the act, or in the body thereof, to either the sections of the Revised Statutes or to the corresponding section of the Constitution. It could have defined the two circuits in the way it has done as an independant and original piece of legislation, and repealed, as it does, all laws in conflict therewith, with- out undertaking or purporting to be an amendment of any specific prior existing law; and in such case it would have effectually wrought a change of these

former existing sections of the Constitution and of the Revised Statutes without any mention of either. In so far then as it operates as a change of the section of the Constitution mentioned, it does so by *implication;* and in such case it is not necessary that the particular section so affected by implication shall be re-enacted in full. The constitutional inhibition against the revision or amendment of statutes or sections of statutes by their titles only, does not apply to amendments that are effected by implication. People vs. Mahaney, 13 Mich. 481; Lehman vs. McBride, 15 Ohio St. 573, text 602; Baum vs. Raphael, 57 Cal. 361. The real effect of this act upon the section of the Constitution is to re-define, as the Constitution permits, the Fifth and Sixth Judicial Circuits. Our Constitution does not prohibit the repeal of a statute or part of a statute by implication.

The fourth ground of the demurrer contends that the act is unconstitutional because it was introduced and passed through three readings in the Senate by one title and so certified to the House, and that it was there amended by striking out all after the enacting clause, and was passed in the House by the same title, and after its passage a new title was given to it not germane to the original title; and because the act, as passed, was never considered in the Senate at all, except simply to concur in the amendment made in the House, and was not read in the Senate at all. The journals of the two houses do not bear out the assertions of fact in this ground of the demurrer with that affirmative clearness and explicitness that is necessary to authorize judicial annulment of a legislative act. The journals of the Senate do show that the bill was there introduced and passed under the title: "A bill

24

to be entitled an act to amend sections 1362 and 1364 of Chapter 2, Title 2 of the Revised Statutes of Florida," and that it was so certified to the House. The journals of the House show that the bill was amended; how, or in what respect, they are silent; that as amended it was put to a final vote and defeated; that upon reconsideration, the bill, *with the amendments*, whatever they were, was passed unanimously by call of the yeas and nays that are duly recorded. Immediately following the entries in the House journal relative to the final vote on the bill there appears an entry to the effect that an amendment to its title was adopted. It is not clear whether this amendment was effected prior or subsequent to the final vote on the passage of the bill; neither is it shown whether it was at all material or not; neither is it shown whether the title was the subject or not of any of the amendments made prior to the passage of the bill. For aught disclosed by the journals, the complete title borne by the enrolled bill may have been the result of one of the amendments made by the House prior to the passage of the bill, and the amendment to its title made after its passage may have been wholly immaterial—a correction in spelling, or the substitution of a capital letter at the beginning of some word in the title. The title of the bill as it came from the Senate was inappropriate, and, according to many of the authorities, was ineffectual; and, looking at the substance of the act, the change made in the title was appropriate, and made it effectually express the subject dealt with. Whether the title of the bill *as passed* is germane to the title of the bill *as introduced*, is not the question. If the subject dealt with by the bill *as passed* is expressed in or germane to the subject expressed in the title *adopted with the bill as part thereof*, it complies with the con-

stitutional requirement whether it be like or unlike the title by which the bill was *introduced*. What the substance of the bill was as it came from the Senate is nowhere shown. The presumption then is that the bill as it passed the House dealt with the same subject already considered by the Senate, and that all the amendments adopted by the House were germane to the same subject, and that one of these amendments was a correction of the erroneous title so as to make it effectually express that subject. Where one house of the Legislature passes a bill through its three constitutional readings, and reports it to the other house, and the latter passes the bill with amendments that it has made germane to its general subject, either to the body of the bill or to its title, it is not necessary that the house where the bill originated shall do anything more than to *concur* by vote in the amendments made. It is unnecessary in such a case to re-read the bill three times again in the house of its origin. Miller vs. State, 3 Ohio St. 475; McCullough vs. State, 11 Ind. 424; Pack vs. Barton, 47 Mich. 520.

The fifth and last ground of the demurrer is, that the journals do not *express* the fact, as they should, that the bill was read *by sections* on its final passage in either house, and that it was not so read on its final passage. This contention is untenable. Our Constitution does not require that the journals should show *affirmatively* that a bill was read *by sections* on its final passage, and if they do not so show, the presumption, in the absence of affirmative evidence to the contrary, would be that it was read *by sections* as required. Supervisors of Schuyler County vs. People, 25 Ill. 181; English vs. Oliver, 28 Ark. 317; State *ex rel.* vs. City of Hastings, 24 Minn. 78; Walker vs. Griffith, 60 Ala. 361; Worton vs. Badgett, 32 Ark. 496.

Besides this the journals show that the bill was in fact read upon its final passage, which is a sufficient showing that it was read by sections. The journal entries in reference to this bill are very loose and confused in many respects, but we fail to find in them any such clear, explicit and affirmative evidence of a violation of the constitutional requirements in the enactment of the law as will justify us in declaring it void. The demurrer of the respondent to the alternative writ is, therefore, overruled, and the peremptory writ will be awarded.