## BRAKE v. CALLISON.

(Circuit Court, S. D. Florida. April 23, 1903.)

**1. STATUTES—ENACTMENT—AMENDMENT.**

Where a bill introduced into the Florida Senate was regularly passed by a call of the yeas and nays, and referred to the House, where, upon its second reading, a substitute was introduced by the judiciary committee of the House, regularly passed, and forwarded to the Senate, which concurred in it as an amendment to the Senate bill, *held*, that such substitution of a new bill of the same character was but an amendment of the original bill, and only required a concurrence, without the formality of a call of the Senate, and was not in violation of the provision of the Constitution of the state, which required the yeas and nays to be taken upon the final passage of a bill.

(Syllabus by the Court.)

Upon demurrer to two counts of declaration based upon chapter 4722, p. 114, Laws Fla. 1899, raising the question of the constitutionality of such act by irregularities in its passage.

Bisbee & Bedell, for plaintiff.
C. D. Rinehart, E. P. Axtell, and Horatio Davis, for defendant.

LOCKE, District Judge. It appears from the records in this case that during the session of the Legislature of Florida in May, 1899, a bill having been introduced in the Senate as Senate bill No. 98, entitled "An act to authorize suits to recover damages for the death of minors caused by the negligence of corporations or private associations of persons," and duly passed, was forwarded to the House of Representatives, where House bill No. 283, with substantially the same title, was pending. When Senate bill No. 98 came on for reading the second time House bill No. 283 was withdrawn, and the judiciary committee of the House offered a substitute in lieu of Senate bill No. 98, which was put upon its passage, duly passed, and ordered certified to the Senate. Upon return to the Senate it was reported that the House of Representatives had passed House ju-

diciary committee substitute for Senate bill No. 98, "An act to authorize suits to recover damages for the death of minors caused by the wrongful act, negligence, carelessness or default of individuals, private associations of persons or corporations," respectfully requesting the concurrence of the Senate therein, and House substitute for Senate bill No. 98, contained in such message, was read for the first time by its title, when "Mr. McCrary moved to concur in the House amendment to Senate bill No. 98, which was agreed to, and Senate bill No. 98, as amended by the House of Representatives, was referred to the committee on enrolled bills," after which it was duly enrolled, and referred to the President of the Senate and Speaker of the House for their signatures, and duly signed by the Governor.

This is the history of the action of the Legislature upon the act in question, as shown by the journals.

Unquestionably, at the first glance, it would appear that a substitute for anything cannot be considered the thing itself, and that a substitute for a bill having only been read by its title, and by an informal vote gone to the enrolling committee and for signing and approval, after such substitution, had not been properly passed by a full reading and call of the yeas and nays. But every presumption is in favor of the legality of any legislation, and no law can be declared unconstitutional except in a very clear case, where a positive affirmative showing is made that some direct provision of the Constitution has been violated.

The provision of the Constitution which is claimed to have been violated is article 3, § 17, which is:

"The reading of a bill by sections on its final passage shall in no case be dispensed with, and the vote on the final passage of every bill or joint resolution shall be taken by yeas and nays, to be entered on the journal of each house."

It is contended that the substitute for Senate bill No. 98 was a new bill, having only been read in the Senate by its title, and not having received any final action by a yea and nay vote upon final passage, as is required by the Constitution, never became a constitutional law. Hence the demurrer to the two counts of the declaration based upon such law. On the other hand, the plaintiff claims that the substitute for the senate bill was but an amendment, which did not require a calling of the yeas and nays upon final passage, but simply a concurrence of the Senate.

Was the substitute for Senate bill No. 98 such an amendment as is recognized by the provisions of the Constitution and by the rulings of the Supreme Court of Florida in Turner v. Hocker, 36 Fla. 358, 18 South. 767, and State v. Dillon, 42 Fla. 95, 28 South. 781, as allowable to be passed by an informal vote of concurrence, and not upon a final call of the yea and nay vote? Or, in other words, did the substitution of one bill for another in the House act as an amendment of that bill only, so that no final reading and passage was required?

It is contended in behalf of the plaintiff in the cause that, according to parliamentary usage, a substitution is considered an amendment, and may be voted upon as such. It is said in Cushing's Law of

Legislative Assemblies, § 1302, that the term "amendment" is used to denote any alteration which may be proposed and adopted; that, according to the etymology of the word, it might be supposed that nothing could be an amendment that did not improve the proposition; but this does not convey a correct idea of what is meant in legislation by the term. A proposition may be amended by an alteration which entirely defeats the purpose of the mover, or it may be turned into a motion of a different kind. The house is not obliged to consider a proposition which is moved and seconded, but it is within its power to substitute a different proposition, and this may be done by means of an amendment. Cushing, Par. Law of L. A. § 1311, citing Hansard's Entries, 32, 33.

This appears to have been the established law of parliamentary usage in England, and, although it appears to have been modified at an early date in our legislative law in some respects, I find that it has only been restricted to changes bringing in a subject different from the original. In the first Congress of the Confederation, in 1781, the fifteenth rule provided that no new motion or proposition should be admitted under color of an amendment, as a substitute for the question or proposition under debate, until the latter is disposed of or disagreed to; and in the House of Representatives of the first Congress, 4th of March, 1789, it was provided as a rule for the conduct of its business that no new motion or proposition shall be admitted under color of an amendment as a substitute for the motion or proposition under debate. But in 1822 a new rule was adopted, and reaffirmed by nearly every succeeding Congress, and extensively adopted in other legislative assemblies, that no new motion or proposition, on a subject different from that under consideration, shall be admitted under color of an amendment. Cush. Par. Law of L. A. §§ 1366–1369.

The Legislature treated the substitution in this case as an amendment, and so termed it. The language of the journal is: "Mr. McCrary moved to concur in the House amendment to Senate bill No. 98, which was agreed to." Journal, June 7, 1899. If it was justified in this, and there was no constitutional provision violated, the court has no authority for putting a different construction upon the legislative action. If the Senate was justified in considering the reported substitute as an amendment only, and proceeding to dispose of it in the ordinary way by concurring, there is no constitutional restriction against such action.

It has been decided by the Supreme Court of Florida that an amendment to a bill once passed by a yea and nay vote by either house, when amended by the other house and reported back, does not require another formal passage. Therefore, if the substitution as reported was but an amendment, as regarded by the Senate, it became a law by a concurrence of the Senate, without a more formal passage. The court cannot investigate the character of the original bill or the substitute, or the justice or policy of the legislation; that is within the sole control of the Legislature.

In People v. McIlroy, 2 L. R. A. 609 (Mich., Nov. 28, 1888), where the Constitution provided that no new bill should be introduced in

either house of the Legislature after the first 50 days of the session, shall have expired, it was held that where a bill had been completely changed by a substitution of a substitute that the substitute could not be considered a new bill.

In State v. Dillon, supra, where the question whether a law had been legally enacted was under consideration, the Supreme Court of Florida, speaking of a bill in question, said:

"No doubt after passing one house it may be very materially amended. The Constitution expressly recognizes this fact, and authorizes it to be done, but it does not require such bill as amended to be read three times in the house originating the bill before concurring in the amendments proposed by the other (State v. Hocker, 36 Fla. 358, 18 South. 767), nor does it require the vote on the adoption of the amendments to be taken by yeas and nays and entered on the journal."

In Cantini v. Tillman (C. C.) 54 Fed. 969, Judge Simonton says:

"It is a settled principle of parliamentary law in this state that, so long as the enacting words remain in a bill, it can be amended to any extent, even by striking out all after the enacting words, and by inserting other words as a substitute. * * * Nothing is more common than to amend by striking out one section and by inserting another, or by striking out several sections and by inserting one or several; and, if it be competent to amend by striking out and inserting one, two, three, four sections, clearly it is competent to strike out all the sections, and to insert others in pari materia. Striking out all after the enacting words, and inserting, is nothing but an amendment, and is governed by the same rules as other amendments."

It is considered that the same rules of legislation control in this state as in South Carolina; that is, that the established parliamentary law of England in force at the time of the Revolution has not been changed by statute.

The defendant has failed to successfully rebut the conclusion that the so-called substitute which was accepted by the Senate as an amendment and acted upon as such was not such an amendment as, according to State v. Dillon, supra, does not require a formal reading or calling of the yeas and nays; and, this once being admitted, there is nothing to show that the statute was not legally enacted.

The demurrer to the two counts of the declaration must be overruled.